UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8167-MGW |
| WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8168-MGW |
| Debtors. _____/ | *Jointly Administered under Case No. 8:16-bk-8167-MGW* |

**DEBTORS' EMERGENCY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS AUTHORIZING
USE OF CASH COLLATERAL AND GRANTING
REPLACEMENT LIENS PURSUANT TO SECTIONS 105(a),
361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE
<u>4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

> **STATEMENT OF RELIEF REQUESTED**
>
> The Debtors seek authority to use cash collateral to fund operating expenses and costs of administration in these Chapter 11 cases and to provide replacement liens as described below as adequate protection for the interests in any cash collateral. The Debtors believe that CPIF Lending, LLC as Collateral Agent, may assert valid and perfected security interests in certain items of cash collateral held by either or both of the Debtors. The Debtors propose to grant as adequate protection replacement liens on all cash collateral acquired by the Debtors or the estates on or after the Petition Date to the same extent, validity, and priority held as of the Petition Date.

WESTPORT HOLDINGS TAMPA, L.P. ("**Westport**"), and WESTPORT HOLDINGS TAMPA II, L.P. ("**Westport II**") (collectively, the "**Debtors**") respectfully request the entry of interim and final orders approving the Debtors' use of cash collateral. In support of this motion, the Debtors respectfully represent as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Sections 105(a), 361, 363, 541, and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

**Background**

3. On September 22, 2016 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

4. Pursuant to an order of this court dated September 22, 2016, the Debtors' Chapter 11 cases are being jointly administered for procedural purposes only under *In re: Westport Holdings Tampa, L.P.,* Case No. 8:16-bk-8167-MGW.

5. The Debtors own and operate "University Village," one of Tampa's most established Continuing Care Retirement Communities ("**CCRC**"). As a CCRC, the Debtors provide "lifecare" services to its residents, which recognize that the healthcare and residency needs vary along a continuum from independent living to full-time nursing care.

6. The Debtors own and operate "University Village," one of Tampa's most established Continuing Care Retirement Communities (CCRCs). University Village Independent Living consisting of 446 apartments. Holdings owns and operates University Village (the "**Village**"), an independent living facility, containing 446 apartments. Under the "continuing care" concept, residents enter into a residency and care agreement with Holdings which requires

payment of a one-time entrance fee (either prospective or deferred) and a monthly service fee. The Debtors provide "lifecare" services to residents which recognize that the healthcare and residency needs of residents vary along a continuum from independent living to full-time nursing care. Generally, payment of these fees entitles residents to the use and privileges of the Villages for life but does not entitle the residents to an interest in the real estate or any property owned by Holdings.

7. Holdings II owns the Independent Living Villas, which are commonly known as the Retirement Center at University Villages (the "**Retirement Center**"). The Retirement Center consists of 46 apartments and condominium units clustered within a neighborhood of duplex buildings and includes a dedicated clubhouse.

## Description of Indebtedness

8. Prior to the Petition Date, CPIF Lending, LLC ("**CPIF**") loaned approximately $9,500,000.00 to the Debtors. The approximate current principal balance owed on CPIF's loan is $9,500,000. The obligations owed to CPIF are secured by mortgages on and security interests in real and personal property owned by the Debtors.

## Relief Requested and Grounds for Relief

9. The Debtors seek the entry of an order, the proposed form of which is attached hereto as **Exhibit A**, authorizing the use of cash collateral substantially in accordance a budget (the "**Budget**") attached hereto as **Exhibit B**, for purposes which include the following:

    (a)    care, maintenance, and preservation of the Debtors' assets;

    (b)    payment of necessary payroll, suppliers, utilities, and other business expenses;

    (c)    other payments necessary to sustain continued business operations; and

    (d)    costs of administration in these Chapter 11 cases.

10. The Debtors request authority to use cash collateral immediately to pay operating expenses necessary to continue the operation of the Debtors' businesses, to maximize the return on their assets, and to otherwise avoid irreparable harm and injury to their businesses and their estates. The Debtors seek the use of cash collateral to pay amounts necessary to protect residents or provide the residents with a high quality of care.

11. There is insufficient time for a final evidentiary hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, to be held before the Debtors must use cash collateral. If this Motion is not considered on an expedited basis and if the Debtors are denied the ability to immediately use cash collateral, there will be direct and immediate harm to the continuing operation of the Debtors' businesses as services to the residents will be interrupted. In order to continue their business activities in an effort to achieve successful reorganization, the Debtors need to use cash collateral in their ordinary business operations. The inability of the Debtors to meet their ordinary business expenses will require the Debtors to discontinue normal operations which will result in irreparable injury to the Debtors and their chances to conduct an orderly sale process. Any such discontinuation would also adversely impact upon the value of any secured party's collateral. Indeed, it is in the best interests of all creditors and the estates that the Debtors use their cash collateral since such usage will preserve the value of any secured party's collateral. Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure authorizes this Court to hold an immediate preliminary hearing on this Motion.

12. In the event that a creditor asserts a lien on cash collateral, in exchange for the Debtors' ability to use cash collateral in the operation of its businesses, the Debtors propose to grant, as adequate protection, to the creditor a replacement lien equal in extent, validity, and

priority to the lien held by the creditor as of the Petition Date. The Debtors assert that any interests of creditors will be adequately protected by replacement lien.

13. If allowed to use cash collateral, the Debtors believe that they can stabilize their business operations and maintain going concern value pending a sale of their assets. Otherwise, the Debtors' business operations will cease, which will significantly reduce the value of the Debtor's assets.

### Notice

14. No trustee or examiner has been appointed in these cases and no official committees have yet been appointed pursuant to Section 1102 of the Bankruptcy Code. Notice of this Motion has been given: (i) by the Court's CM/ECF system to the Office of the United States Trustee, and (ii) by United States first class mail to all known secured creditors of the Debtor, the twenty (20) largest unsecured creditors of the Debtors, and certain other parties listed on the attached Certificate of Service. The Debtors submit that, given the emergency nature of the relief requested herein, no other or further notice need be given.

### Basis for Emergency Relief

15. The facts previously set out herein clearly justify an immediate hearing on this motion. If the Debtors cannot utilize cash collateral, the Debtors will be unable to pay operating expenses necessary to continue the operation of the Debtors' businesses and will be irreparably harmed. The Debtors have narrowly tailored the relief requested on an emergency basis in order to allow them to survive pending a final cash collateral hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Debtors respectfully request that this Court enter an order: (a) granting this motion; (b) authorizing the interim use of cash collateral; (c) scheduling a final cash

collateral hearing in accordance with Bankruptcy Rule 4001(b)(2); and (d) providing such other and further relief as may be just and proper.

          */s/ Stephen R. Leslie*
Scott A. Stichter (FBN 0710679)
Stephen R. Leslie (FBN 000349)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida   33602
Telephone:  (813) 229-0144
Fax:  (813) 229-1811
Emails: sstichter@srbp.com; aharris@srbp.com
Attorneys for Debtors

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct of the foregoing ***Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure*** has been furnished on this 22nd  day of September, 2016, by either the Court's CM/ECF system, U.S. Mail, or by Email to:

Office of the United States Trustee
20 Largest Unsecured Creditors

CPIF Lending, LLC
c/o Traci Rollins, Esquire
traci.rollins@squirepb.com

          */s/Stephen R. Leslie*
Stephen R. Leslie

| | | |
|---|---|---|
| Airtech<br>Po Box 1120<br>Zephyrhills, FL 33539 | Bright House Networks<br>P.O. Box 31710<br>Tampa, FL 33631 | Clifton Larson Allen<br>Attn: A/R - Orlando #76<br>141 Avenue C SW, Suite 160<br>Winter Haven, FL 33880 |
| E Bs Painting & Services, LLC<br>7212 Donald Ave<br>Tampa, FL 33614 | Eclipse Networks, Inc<br>100 Ashford Center N., #100<br>Atlanta, GA 30338 | Express Services, Inc.<br>Po Box 535434<br>Atlanta, GA 30353-5434 |
| First Insurance Funding Inc.<br>450 Skokie Blvd Ste 100<br>Northbrook, IL 60062 | Florida Department of Financial Services<br>Attn: Compliance Section<br>PO Box 6350<br>Tallahassee, FL 32314-6350 | HD Supply<br>P. O. Box 509058<br>San Diego, CA 92150-9058 |
| Lamn, Krielow, Dytrych & Co<br>500 University Blvd<br>Suite #215<br>Jupiter, FL 33458 | Manasota Flooring, Inc.<br>4551 N Washington Blvd<br>Sarasota, FL 34234 | Masterpiece Living<br>11360 North Jog Road<br>Suite 102<br>Palm Beach Gardens, FL 33418 |
| Novum Management Group<br>17901 Hunting Bow Circle, #102<br>Lutz, FL 33558 | Seiu National Industry Pension Fund<br>P.O. Box 841967<br>Boston, MA 02284-1967 | TALF, Inc.<br>3391 Cypress Gardens Rd.<br>Winter Haven, FL 33884 |
| Tampa Electric<br>c/o Intuition Systems, Inc.<br>4700 140 Ave N., Ste # 106<br>Clearwater, FL 33762 | Team Construction Services, LLC<br>4524 Floramar Terrace<br>New Port Richey, FL 34652 | The Home Depot - Northgate #279<br>Po Box 183176<br>Columbus, OH 43218 |
| TR & SNF, Inc.<br>3391 Cypress Gardens Rd.<br>Winter Haven, FL 33884 | US Foodservice<br>P.O. Box 281841<br>Atlanta, GA 30384-1481 | |

# EXHIBITS A & B

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8167-MGW |
| WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8168-MGW |
| Debtors. _____/ | *Jointly Administered under Case No. 8:16-bk-8167-MGW* |

**INTERIM ORDER ON DEBTORS' EMERGENCY MOTION FOR
ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO
SECTIONS 105(a), 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE
AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

THIS CASE came before the Court for hearing on _____ 2016, at _____ __.m. for consideration of the *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 55 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure* (Doc. No. ____) (the "**Motion**"). The Motion seeks the entry of interim and final orders

authorizing the Debtors to use "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code.

The Court finds that due and sufficient notice of the Motion and the Hearing was provided to: (i) the Office of the United States Trustee for the Middle District of Florida, (ii) CPIF Lending, LLC (the "**Lender**"), (iii) all other known secured creditors of the Debtors, and (iv) the twenty (20) largest unsecured creditors of each of the Debtors and that no other or further notice is necessary.  The Court considered the Motion, together with the record and the arguments of counsel at the Hearing, and it appearing that the use of Cash Collateral to the extent provided herein is necessary on an interim basis in order to avoid irreparable harm to the Debtors, and for the reasons announced on the record at the Hearing which shall constitute the decision of the Court, it is

**ORDERED** that:

1. Notice of the Motion and the Hearing on the Motion was adequate and appropriate in the current circumstances of these jointly administered Chapter 11 cases as contemplated by 11 U.S.C. §102(a) and Fed. R. Bankr. P. 4001(b)(2).

2. The Motion is granted on an interim basis pending a further hearing to be conducted by the Court on _____, 2016, at ___:00 _.m.

3. All persons and entities owing monies to the Debtor are authorized and directed to pay the monies to the Debtor, without setoff, which sums shall upon collection by the Debtor constitute Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code).

4. The Debtor is authorized to use Cash Collateral including, without limitation, cash, deposit accounts, accounts receivable, proceeds from the lease of real property, and proceeds from farming operations including the sale of produce in accordance with the budget (the "**Budget**"), a

copy of which is attached hereto as **Exhibit A**, so long as the aggregate of all expenses for each week do not exceed the amount in the Budget by more than ten percent (10%) for any such week on a cumulative basis (the "**Variance**").  Notwithstanding the foregoing, subject to the provisions of paragraph ten of this Order, expenditures in excess of the Variance or not on the Budget will not be deemed to be unauthorized use of Cash Collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure.

5. The Debtors are authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to the Lenders pursuant to the terms and conditions of this Interim Order.  As adequate protection with respect to the Lender's interests in the Cash Collateral, the Lender is granted replacement liens (the "**Replacement Liens**") in and upon all of the categories and types of collateral in which they held a security interest and lien as of the Petition Date to the same extent, validity and priority that the Lender held as of the Petition Date.

6. The Debtors shall maintain insurance coverage for the Collateral in accordance with the obligations under the loan and security documents.

7. This Order is not and shall not be construed as determinative as to whether or not any creditor has a valid lien on any property of the Debtors or their estates.  This Order is not and shall not be construed as determinative as to the extent or amount of any secured claim associated with any such lien.

8. This Order is without prejudice to the Debtors' right to challenge the extent, validity, or priority of any lien or claim of any creditor, and is likewise without prejudice to the

right of any creditor to seek additional relief concerning Cash Collateral by subsequent motion and nothing contained in this Order shall be deemed to constitute a waiver of any party's rights.

9. This Order is without prejudice to the Debtors' rights to seek authority by separate motion to pay monies in excess of the amounts set forth in the Budget.

10. It shall be an event of default if the Debtors exceed the Variance without the prior written consent of the Lenders, which consent shall not be unreasonably withheld; provided, however, in the event of a default, the Debtors' authority to use Cash Collateral shall continue until the Lender obtains an order by appropriate motion after notice and hearing requiring the Debtors to cease using Cash Collateral.

11. In accordance with Rule 4001 of the Bankruptcy Rules, the Court finds the Debtors' authorization to use Cash Collateral pursuant to this Order is necessary to avoid immediate and irreparable harm to the Debtor's estate.

12. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

*Attorney Scott A. Stichter is directed to serve a copy of this order on interested parties who are non-ECF users and file a proof of service within 3 days of entry of the order.*

5

# **<u>EXHIBIT A</u>**

5

### Week 1
**Payables**

| | |
|---|---:|
| Food Vendors | $75,000.00 |
| Utilities | $65,000.00 |
| Package Insurance | $54,000.00 |
| Health Insurance(s) | $30,702.00 |
| TR&SNF / TALF | $75,000.00 |
| Cohen- CPIF | $117,000.00 |
| Mgmt-GP Fee | $6,200.00 |
| Alert Security | $41,000.00 |
| | **$463,902.00** |

### Week 2
**Payables**

| | |
|---|---:|
| Food Vendors | $11,027.00 |
| Utilities | $26,682.00 |
| Workers Comp Insurance | $7,900.00 |
| Mgmt-GP Fee | $6,200.00 |
| Cap Exp Labor | $4,500.00 |
| Assurance Maintenace | $7,000.00 |
| Payroll | $105,000.00 |
| Payroll Taxes | $34,000.00 |
| Various Vendors | $100,000.00 |
| | **$302,309.00** |

### Week 3
**Payables**

| | |
|---|---:|
| Mgmt-GP Fee | $6,200.00 |
| Cap Exp Labor | $6,000.00 |
| | **$12,200.00** |

### Week 4
**Payables**

| | |
|---|---:|
| Payroll | $105,000.00 |
| Payroll Taxes | $34,000.00 |
| Mgmt-GP Fee | $6,200.00 |
| Cap Ex Labor | $5,000.00 |
| | **$150,200.00** |

**$928,611.00**