UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8167-MGW |
| WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP, | Case No. 8:16-bk-8168-MGW |
| Debtors. _____/ | *Jointly Administered under* Case No. 8:16-bk-8167-MGW *Emergency Relief Requested* |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF DEBTORS' ASSETS; (II) APPROVING OVERBID AMOUNTS AND STALKING HORSE PROTECTION FEE; (III) APPROVING FORM AND MANNER OF NOTICE OF BIDDING PROCEDURES; AND (IV) SETTING OBJECTION DEADLINES**

WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP and WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP, the Debtors and Debtors-in-Possession (together, the "**Debtor**s"), respectfully request the entry of an order (a) approving bidding procedures for the sale of the Debtors' Assets (as defined below); (b) approving the Overbid Amounts (as defined below) and Stalking Horse Protection Fee (as defined below); (c) approving the form and manner of notice of bid procedures and the Auction (as defined below); and (d) setting a deadline to object to the relief requested.  In support of this Motion, the Debtors represent the following:

**Jurisdiction and Venue**

1.     This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334.  The subject matter of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. § 1408.

2. The statutory predicates for the relief sought in this Motion include 11 U.S.C. §§ 105, 363, 365, 1107 and 1108 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure.

**Background**

3. On September 22, 2016 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

4. Pursuant to an order of this court dated September 22, 2016, the Debtors' Chapter 11 cases are being jointly administered for procedural purposes only under *In re: Westport Holdings Tampa, Limited Partnership*, Case No. 8:16-bk-8167-MGW.

5. The Debtors own and operate "University Village," one of Tampa's most established Continuing Care Retirement Communities ("**CCRC**"). Westport Holdings Tampa, Limited Partnership ("**Holdings**") owns and operates University Village (the "**Village**"), an independent living facility containing 446 apartments. Westport Holdings Tampa II, Limited Partnership ("**Holdings II**") owns the Independent Living Villas, which are commonly known as the Retirement Center at University Villages (the "**Retirement Center**"). The Retirement Center consists of 46 apartments and condominium units clustered within a neighborhood of duplex buildings and includes a dedicated clubhouse.

6. As a CCRC, the Debtors provide "lifecare" services to its residents, which recognize that the healthcare and residency needs vary along a continuum from independent living to full-time nursing care. Under the "continuing care" concept, residents enter into a residency and care agreement with Holdings which requires payment of a one-time entrance fee (either prospective or deferred) and a monthly service fee. Generally, payment of these fees

entitles residents to the use and privileges of the Village for life but does not entitle the residents to an interest in the real estate or any property owned by Holdings.

7. The Debtors' assets are encumbered by the liens of CPIF Lending, LLC, who is owed approximately $9,500,000. The Debtors owe approximately $1.6 million to trade creditors. The Debtors owe refund claims to certain residents under matured Life Care Residence Agreements ("**LCRAs**"). Certain residents and former residents loaned money to the Debtors under a personal income protection program ("**PIP**"). As of the Petition Date, the Debtors owed approximately $9 million for matured LCRA refunds and PIP claims.

8. The Debtors also have contingent liabilities to residents. The contingent, unmatured potential entrance fee contract liability under the LRCAs and PIP liability totals approximately $32,000,000

9. The Debtors have entered into a Letter of Intent[1] (the "**LOI**") which provides for the sale by the Debtors and Westport Nursing Tampa, LLC of real and personal property more fully described in the LOI (the "**Debtors' Assets**" and the "**Non-Debtor Assets**," respectively, and collectively, the "**Assets**") and the purchase by Skyline HealthCare, LLC (the "**Purchaser**") of the Assets, which provides for a total purchase price of $78,500,000. The LOI contemplates the execution of asset purchase agreements (collectively, the "**APA**") on or before November 30, 2016.

10. Contemporaneous with the filing of this Motion, the Debtors have filed a motion seeking approval of the transactions contemplated by the LOI (the "**Sale Motion**") which will seek the entry of an order that approves the APA and authorizes the Debtors to perform under the APA.

---

[1] The LOI is attached as an exhibit to the Sale Motion (as defined below).

**Relief Requested**

***Bidding and Sale Procedures***

11. This Motion is filed to seek approval of bidding procedures in connection with the sale of the Assets, including (i) approval of procedures for the submission of competing bids, (ii) approval of the Purchaser as the stalking horse bidder, including approval of the Stalking Horse Protection Fee, and (iii) approval of the Overbid Amounts.

12. The Debtors believe that the bidding procedures set forth in this Motion will assist in determining the highest and best offer available to the Debtors for the sale of the Assets and the other transactions contemplated by the APA. The Debtors believe that these procedures are favorable to the Debtors, their estates, and creditors and create a fair and level playing field for all interested bidders. The Debtors submit that these proposed procedures will satisfy the interests of all creditors in assuring that the Debtors achieve the maximum value for the Assets and the other transactions contemplated by the APA.

13. The Debtors request that the Court conduct a hearing on this Motion on November 2, 2016 at 10:30 a.m. to consider entry of an order approving the bidding procedures set forth herein and approving the form and manner of notice with respect thereto (the "**Bid Procedures Order**").

14. The Debtors request that this Court approve the following procedures (the "**Bid Procedures**") for the submission and consideration of any competing bid ("**Bid**") by any competing bidder ("**Bidder**") for the Assets:

    (a) By no later than five (5) business days after the date of entry of the Bid Procedures Order, the Debtors will serve notice of the Sale Motion and the Bid Procedures on interested parties as required by the Bankruptcy Code and the Bankruptcy Rules.

(b) An auction ("**Auction**") to consider any competing Bids in respect of the Assets will be held at the offices of Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602 on **December 20, 2016 at 9:30 a.m.** or such later date as agreed by the Debtors and the Purchaser or as may be scheduled by the Court. At the Sale Hearing (as defined below), the Debtors will recommend to the Court the offer that they consider to be the highest and best offer to the Debtors' estates for the Assets, after taking into account all aspects of the Bids and the APA (including, without limitation, the amount of the purchase price, the method and timing of the payment of the purchase price, conditions to closing, the time for closing, the representations, warranties, and covenants to be provided by the Debtors, and the indemnification obligations of the Debtors). The value of a Bid, for purposes of these proceedings, shall be determined by comparing, among other things, (i) the type, number and nature of any changes in the Bidder's Agreement (as defined below) requested by each Bidder, (ii) the extent to which such modifications are likely to delay the closing of the sale to such Bidder, and the cost to the Debtors and their estates of such modifications or delay, (iii) the extent to which such Bid includes the purchase of all or less than all of the Assets, or group of Assets, (iv) the type and amount of consideration to be received by the Debtors' estates, (v) the existence of any financing, due diligence or other contingencies, (vi) the amount of any cure payments, which, if paid, would reduce the proceeds available for distribution to creditors, (vii) the likelihood of the Bidder's ability to close the transaction, and (viii) the net benefit to the Debtors' estates and their creditors.

(c) **ANY SALE WILL BE SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT**. The Court will conduct a hearing (the "**Sale Hearing**") on **December 21, 2016**, or such later date as agreed by the Debtors and Purchaser (or, if the Purchaser is not the prevailing bidder, the prevailing bidder) or as may be scheduled by the Court, to consider approval of the Sale Motion and the APA and any higher or better offers submitted in accordance with the procedures set forth in the Bid Procedures Order.

(d) All potential Bidders or their authorized representatives must be present at the Auction and the Sale Hearing. The Court will determine the highest and best offer at the Sale Hearing.

(e) Any Bidder desiring to participate in the live Auction must submit or agree to all of the following, or such other terms agreed to by the Debtors, by no later than **December 15, 2016**, or such other date as may be fixed by the Court (the "**Bid Deadline**") in order to be a qualified bidder (a "**Qualified Bidder**"):

i. An executed asset purchase agreement for the Debtors' Assets and the Non-Debtor Assets in substantially the same form of the APA (the "**Bidder's Agreement**"). The Bidder shall also be required to provide a red-lined version of the Bidder's Agreement which shall reflect changes from the APA.

ii. Present relevant background and financial information reasonably satisfactory to the Debtors (including without limitation the latest available audited and unaudited financial statements) demonstrating the Bidder's financial

ability to close and to consummate an acquisition of the Debtors' Assets and the Non-Debtor Assets.

iii. Payment of a good faith deposit in immediately available funds in the amount of One Million Dollars ($1,000,000.00) (the "**Bid Deposit**"), which shall be made payable to Stichter, Riedel, Blain & Postler, P.A. ("**Stichter Riedel**"), counsel to the Debtors, by no later than the Bid Deadline (or such later date agreed to by the Debtors). Wire instructions for the Bid Deposit will be provided upon written request made to the Debtors.

iv. Provide full disclosure of each entity that will be participating in such Bid in order to satisfy the requirements set forth in Sections 363(m), 363(n), and 365(f)(2) of the Bankruptcy Code.

(f) Every Bidder's initial Bid over the offer made by the Purchaser in the APA must be received no later than the Bid Deadline (unless otherwise extended by the Debtors) and must provide for an increase of at least Two Hundred Thousand Dollars ($200,000.00) above the purchase price offered by the Purchaser, plus the stalking horse protection fee in the amount of Five Hundred Thousand Dollars ($500,000.00) (the "**Stalking Horse Protection Fee**") for a total initial overbid of Seven Hundred Thousand Dollars ($700,000.00) (the "**Initial Overbid Amount**"). All subsequent Bids above the initial Bid (including any subsequent Bid which may be made by the Purchaser) must be in incremental increases of at least Two Hundred Thousand Dollars ($200,000.00) (the "**Subsequent Overbid Amount**" and together with the Initial Overbid Amount, the "**Overbid Amounts**"). For the avoidance of doubt, the Stalking Horse Protection Fee shall be credited to each bid of the Purchaser beyond its initial Bid. All bids submitted shall be irrevocable through the Auction process. The allocation of any higher and better Bids between the Debtors' Assets and the Non-Debtor Assets shall be left to the sole discretion of the Debtors, provided however that the allocation of the total consideration must be such that all claims of the Debtors are paid in full before any of the increased Bids can be allocated to the Non-Debtor Assets.

(g) The Debtors shall have the right to accept or reject any and all Bids in their reasonable discretion.

(h) Any Bidder shall be entitled to submit further Bids at the Auction.

(i) The Debtors may continue or adjourn the Auction from time to time with reasonable notice to the Purchaser and the Qualified Bidders.

(j) Any Bid shall not contain any conditions precedent to such Bidder's obligation to purchase the Assets and assume and perform any liabilities to be assumed, other than as may be included in the APA.

(k) The Bidder whose bid is selected by the Court at the Sale Hearing as the highest and best offer shall be deemed the "**Successful Bidder**."

(l) The Court shall register the second highest Bid and Bidder (the "**Backup Bidder**"), whose Bidder's Agreement shall be a binding contract with the Debtors and shall close, without the necessity of further Court order, in the event the successful Bidder fails to consummate the acquisition of the Assets in accordance with the provisions described above and in the order approving the Sale Motion (the "**Sale Order**"). Any closing with the Backup Bidder shall occur within ten (10) days of the notification that the Successful Bidder failed to close. The Bid Deposit of the Successful Bidder and the Backup Bidder shall be retained until the successful closing of the sale. The Bid Deposit of all other Bidders shall be returned within five (5) business days of the entry of the Sale Order.

(m) In the event the Successful Bidder fails to close the sale through no fault of the Debtors, the Successful Bidder will forfeit its Deposit. In the event that the Successful Bidder fails to close, and subsequently the Backup Bidder fails to close the sale through no fault of the Debtors, the Backup Bidder will also forfeit its Deposit. In the event that the Successful Bidder closes the sale, the Debtors shall return, by check, the Backup Bidder's Deposit within five (5) business days from the closing.

(n) The Purchaser shall only be entitled to the Stalking Horse Protection Fee in the event that (i) the Purchaser remains willing, and is able, to proceed with closing, and is not in breach of its obligations under the APA; and (ii) Debtors close a transaction with a third party for the sale and purchase of the Assets.

(o) The Debtors will file a notice with the Court at least two (2) days prior to the date of the Sale Hearing indicating the Bids received, and will serve such notice, by electronic mail transmission, on counsel to all Bidders.

### *Objection*

15. All objections to the transactions contemplated by the Sale Motion and the APA shall be filed with the Court and served on the parties set forth in subparagraph 14(a) above on or before the Bid Deadline (the "**Sale Objection Deadline**").

16. Any lessor or other party to any Contract to be assumed and/or assigned to the Purchaser that objects to, and/or asserts any cure claims, defaults or any other claims against the Debtors in connection with the proposed assumption and/or assignment of its Contract must file with this Court, **by no later than the Sale Objection Deadline**, any objection to the assumption and/or assignment of its Contract and/or assertion of claim or default (an "**Objection"**), which Objection shall set forth:

    (a)    the specific grounds for such Objection;

    (b)    any and all defaults of the Debtors (whether monetary or non-monetary) that it alleges are in existence under such Contract and, (i) if such alleged defaults are monetary, the nature of such monetary defaults (including the date and amount of any payment allegedly due under the Contract) and cure amounts, if any, due and owing by the Debtors pursuant to 11 U.S.C. §365(b) and, (ii) if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the amount of money or the type of action required to cure such non-monetary defaults; and

    (c)    any and all claims of any nature whatsoever against the Debtors.

17.    Any lessor or other party to any Contract who fails to timely file a written Objection to the proposed assumption and/or assignment of its Contract as set forth above shall be conclusively deemed to have waived any such Objection and to have consented to the assumption and/or assignment of its Contract to the Purchaser. Any lessor or other party to a Contract not specifying any default or claim as required herein shall be deemed to have conclusively acknowledged that no default or claim exists under any such Contract.

### *Overbid Amounts and Stalking Horse Protection Fee*

18.    The Debtors respectfully submit that the Overbid Amounts are equitable and in the best interests of the Debtors' estates. Given the size of the transaction and the amount of diligence and effort required by the Purchaser to complete the transaction, it would be inequitable to allow a Bidder to outbid the Purchaser by an amount less than the Overbid Amounts.

19.    In addition, the Debtors request that the Court approve the Purchaser as the stalking horse bidder and approve the reasonableness of the Stalking Horse Protection Fee in the amount of $500,000 to be paid to the Purchaser in the event that the Debtors close a transaction with a third party for the sale and purchase of the Assets. Courts routinely approve stalking horse protection fees in the range of two to four percent of the purchase price. The Stalking

Horse Protection Fee should be approved because it is approximately one percent (1%) of the cash portion of the purchase price, was negotiated by the Purchaser, is fair and reasonable, and will not result in a chilling of the bidding.

### *Notice*

20.    The Debtors also propose to send the Bid Procedures Order to: (a) all parties listed on the Local Rule 1007-2 Parties in Interest List; (b) all parties which, to the knowledge of the Debtors, have or have asserted liens on or other interests in the Assets; (c) all lessors or other parties to the Contracts; and (d) any party that has previously contacted the Debtors, its representatives, or its counsel, or that have expressed an interest in acquiring the Assets.

21.    The Debtors seek this Court's approval of the form and manner of notice as being adequate and sufficient notice of the Bid Procedures and the filing of Objections to the assumption and/or assignment of the Contracts.

WHEREFORE, the Debtors respectfully request the entry of an order granting the relief requested herein, and providing such other and further relief as is just and proper.

DATED: October 31, 2016

        */s/ Scott A. Stichter*
Charles A. Postler (FBN 455318)
Scott A. Stichter (FBN 0710670)
Stephen R. Leslie (FBN 0000349)
Matthew B. Hale (FBN 0110600)
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
Email: sstichter@srbp.com
Attorneys for the Debtors


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copies of the foregoing Bid Procedures Motion have been furnished on this 31st day of October, 2016, by the Court's CM/ECF system to all creditors and parties in interest receiving noticing through the Court's CM/ECF system. All creditors and parties in interest not receiving CM/ECF noticing will be served by U.S. Mail the immediately following day, and the Debtors shall file a supplemental certificate of service reflecting such service.

    */s/ Scott A. Stichter*
    Scott A. Stichter