ORDERED.

Dated:  December 07, 2016

Michael G. Williamson
Chief United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| **WESTPORT HOLDINGS TAMPA, LIMITED PARTNERSHIP,** | Case No. 8:16-bk-08167-MGW |
| **WESTPORT HOLDINGS TAMPA II, LIMITED PARTNERSHIP,** | Case No. 8:16-bk-08168-MGW |
| | *Jointly Administered under Case No. 8:16-bk-08167-MGW* |
| Debtors. | |

_____/

**AMENDED ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES
IN CONNECTION WITH THE SALE OF DEBTORS' ASSETS; (II)
APPROVING OVERBID AMOUNTS AND STALKING HORSE
PROTECTION FEE; (III) APPROVING FORM AND MANNER OF NOTICE
OF BIDDING PROCEDURES; AND (IV) SETTING OBJECTION DEADLINES**

THESE CASES came on for hearing before the Court on December 7, 2016, at 11:00

a.m. (the "**Hearing**"), upon (i) Debtors' Emergency Motion for Entry of an Order (I) Approving

Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid

Amounts and Stalking Horse Protection Fee; (III) Approving Form and Manner of Notice of

Bidding Procedures; and (IV) Setting Objection Deadlines (Doc. No. 118) (the "**Bid Procedures**

**Motion**"), (ii) Debtors' Emergency Motion to Reconsider or, in the Alternative, Amend Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Protection Fee; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (Doc. No. 165) (the "**Motion to Amend**"), and (iii) Big Rock Partners' Motion for Rehearing and Reconsideration of, or Alternatively, Preliminary Objection to, Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Protection Fee; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines [D.E. 146] (Doc. No. 157) (the "**Big Rock Motion**").

In the Bid Procedures Motion, the Debtors requested an emergency hearing for the Court to consider the entry of an order (i) approving bidding procedures in connection with the sale of substantially all of the assets of the Debtors and Westport Nursing Tampa, L.L.C. ("**WNT**") to Skyline Health Care, LLC, a New Jersey limited liability company ("**Skyline**"), in accordance with the terms and conditions more particularly described in a Letter of Intent dated October 31, 2016, by and between the Debtors, WNT, and Skyline (the "**Skyline Letter of Intent**"), or to such other party submitting the highest and best offer for such assets at an auction, (ii) approving overbid amounts and a stalking horse protection fee for Skyline in connection with such sale, (iii) approving the form and manner of notice of the sale and the bidding procedures, (iv) setting deadlines for objections to the sale, and (v) establishing procedures for the assumption and/or assignment by the Debtors of certain executory contracts and unexpired leases to which either of the Debtors is a party.  The Skyline Letter of Intent is attached as <u>Exhibit A</u> to the Debtors'

Motion for Entry of an Order Authorizing (I) the Sale of Debtors' Assets, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers, and (II) Authorizing the Assumption and Assignment of Contracts (Doc. No. 119) (the "**Sale Motion**").

On November 16, 2016, the Court entered its Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Protection Fee; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (Doc. No. 146) (the "**Original Bid Procedures Order**").  In the Original Bid Procedures Order, the Court, among other things, (i) approved the Debtors' selection of Skyline as the "stalking horse bidder" with respect to the sale of substantially all of the assets of the Debtors and WNT, (ii) approved a stalking horse protection fee for Skyline in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "**Skyline Break-Up Fee**"), and (iii) established bidding procedures in connection with such sale (the "**Original Bidding Procedures**").

On November 18, 2016, and subsequent to the entry of the Original Bid Procedures Order, Skyline terminated the Skyline Letter of Intent.  Promptly thereafter, the Debtors filed the Motion to Amend with the Court.  In the Motion to Amend, the Debtors requested an emergency hearing for the Court to consider the entry of an order (i) amending the Original Bid Procedures Order, (ii) approving revisions to the Original Bidding Procedures (including new dates and deadlines), and (iii) approving a new stalking horse bidder in connection with the sale of substantially all of the assets of the Debtors and WNT.

On November 30, 2016, the Debtors filed their Notice of Filing of Executed Letter of Intent Received from A+ Operating LLC (Doc. No. 177) (the "**Notice of Filing**").  At a hearing

held by the Court on November 30, 2016, counsel for the Debtors announced that the Debtors had selected A+ Operating LLC, a Delaware limited liability company ("**A+**")[1], as the new stalking horse bidder, in accordance with the terms and conditions set forth in a Letter of Intent dated November 29, 2016, by and between the Debtors, WNT, and A+ which was executed by A+ (the "**A+ Original Letter of Intent**").  The A+ Original Letter of Intent is attached as Exhibit A to the Notice of Filing.

On December 2, 2016, the Court entered its Order (A) Granting, in Part, Debtors' Emergency Motion to Reconsider or, in the Alternative, Amend Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Protection Fee; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines and (B) Scheduling Further Hearing and Deadlines (Doc. No. 184) (the "**December 2 Order**").  In the December 2 Order, the Court, among other things, (i) approved the Debtors' selection of A+ as the new "stalking horse bidder" with respect to the sale of the assets of the Debtors and WNT, (ii) approved a stalking horse protection fee for A+ in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "**A+ Break-Up Fee**"), and (iii) scheduled a hearing for December 7, 2016, at 11:00 a.m., to consider the additional relief requested by the Debtors in the Motion to Amend as well as the relief requested by Big Rock Partners and Big Rock Senior Housing Management LLC ("**Big Rock**") in the Big Rock Motion.

On December 5, 2016, the Debtors filed their Notice of Filing of Executed Revised Letter of Intent Received from A+ Operating LLC (Doc. No. 192) (the "**Revised Notice of Filing**"),

---

[1]    For purposes of this Order, the term "A+" shall also include any affiliate of A+ who enters into the Definitive Agreements (as defined below).

which attached a revised Letter of Intent dated December 5, 2016, by and between the Debtors, WNT, and A+ which was executed by A+ (the "**A+ Revised Letter of Intent**"). The A+ Revised Letter of Intent is attached as <u>Exhibit A</u> to the Revised Notice of Filing. In addition, attached as <u>Exhibit B</u> to the Revised Notice of Filing is a blackline comparison of the changes between the A+ Original Letter of Intent and the A+ Revised Letter of Intent. The A+ Revised Letter of Intent provides for the sale by the Debtors and WNT of substantially all of their assets (as such assets are more particularly described in the A+ Revised Letter of Intent, the "**Assets**") to A+ and the purchase of the Assets by A+, as well as the assumption by A+ of certain specified liabilities of the Debtors, pursuant to 11 U.S.C. §§ 363 and 365, for a total transaction consideration of $78,500,000.00 (consisting of cash consideration to the Debtors and WNT and the assumption of certain liabilities of the Debtors). The A+ Revised Letter of Intent is also subject to several conditions, including (i) the completion of due diligence by A+, (ii) (a) the execution and delivery of a definitive asset purchase agreement between the Debtors, WNT and A+ (the "**Definitive Purchase Agreement**"), and (b) the execution and delivery of one or more definitive operations transfer agreements (the "**OTAs**" and, together with the Definitive Purchase Agreement, the "**Definitive Agreements**") between the Current Operators (as that term is defined in Section 5 of the A+ Revised Letter of Intent) and A+ and the New Operator(s) (as that term is defined in Section 5 of the A+ Revised Letter of Intent), and (iii) the filing by the Debtors with the Court of an amended Sale Motion (the "**Amended Sale Motion**") consistent with the terms of the A+ Revised Letter of Intent and the Definitive Agreements, in each case with respect to subparagraphs (i)-(iii) by December 20, 2016. In the A+ Revised Letter of Intent, the Debtors also agreed to amend their Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (Doc. No. 152)(as amended, the "**Amended Plan**") in order to provide for (i)

the implementation of the sale of the Assets as a sale under a plan confirmed under Section 1129 of the Bankruptcy Code, as provided in Section 1146(a) of the Bankruptcy Code, (ii) A+ to receive the benefit of any releases or injunctions provided under the Amended Plan, and (iii) the Court to retain continuing jurisdiction over any sale of the Assets.

The Court considered the Bid Procedures Motion and the Motion to Amend (collectively, the "**Debtors' Motions**"), together with the record and the arguments of counsel at the Hearing, and being otherwise duly advised in the premises, and for the reasons announced on the record at the Hearing, which shall constitute the order of the Court as if specifically provided herein, finds that the relief requested in the Debtors' Motions is necessary and appropriate, and that the Debtors' Motions are well taken and shall be granted in accordance with the terms and conditions set forth herein.  The Court further finds that it would be in the best interests of the Debtors, their creditors and their estates that an orderly procedure for the selection of the highest and best offer for the sale of the Assets be established, which will create a fair and level playing field for all prospective bidders and represent the best method for maximizing the value of the Assets.  The Court thus finds that it is appropriate to provide other prospective purchasers with the opportunity to submit competing bids for the Assets, and that notice of the proposed sale of the Assets to A+ shall be sent to all parties (collectively, the "**Bidder List**") that have expressed interest to, or have been in discussions with, the Debtors as to the potential opportunity to acquire the Assets, as well as to all creditors and parties in interest.  The Court also finds that it is appropriate to require any such prospective purchasers to comply with certain requirements in connection with the submission of competing bids, and that the bidding procedures proposed by the Debtors, as set forth in the Debtors' Motions and as modified at the Hearing and contained in this Order, are reasonable.  The Court further finds that it is appropriate under the circumstances

to approve the Overbid Amounts (as defined below) and the A+ Break-Up Fee as set forth below, and to deny the payment of the Skyline Break-Up Fee to Skyline.  The Court also finds that it is appropriate to establish deadlines for the filing and service of written objections to the sale of the Assets to any Qualified Bidder (as defined below).

The Court also finds that it is appropriate that notice of the proposed assumption and/or assignment by the Debtors to A+ (or any other party that may be the Successful Bidder (as defined below) or the Backup Bidder (as defined below)) of any executory contracts and unexpired leases to which either of the Debtors is a party (collectively, the "**Assumed Contracts**") be sent to each lessor or other party to any Assumed Contract (collectively, the "**Contract Parties**") to be assumed and/or assigned to A+ (or any other party that may be the Successful Bidder or the Backup Bidder) in accordance with the provisions of this Order.  The Court finds that it is also appropriate to require the establishment of a deadline for the filing and service by the Contract Parties of written objections to, and/or the assertion of any cure claims, defaults or any other claims against the Debtors in connection with, the proposed assumption and/or assignment of any Assumed Contract to A+ (or any other party that may be the Successful Bidder or the Backup Bidder).  Notwithstanding the foregoing, the Court finds that it is appropriate to set forth a separate procedure with respect to the assumption and/or assignment of the Resident Contracts (as defined below) as set forth below in this Order.

The Court also finds that it is appropriate for Jeffrey Warren (the "**Examiner**") to be involved in the sale process.  The Examiner shall have such duties in connection with the sale process as set forth in this Order and in the Order Appointing Examiner (Doc. No. 133) (the "**Examiner Order**"), which, among other things, shall include (i) participating in the sale process described in this Order, (ii) investigating A+ and any potential Bidders (as defined

7

below), their qualifications, and any connection they may have to the Debtors or their respective principals, limited partners, and affiliates, and (iii) preparing to present an oral report to the Court discussing his conclusions and analysis in connection with the Auction (as defined below) and the Court's approval of any sale of the Assets.

The Court finds that notice of the Debtors' Motions and the relief sought therein and the notice of the Hearing to creditors and other parties in interest was sufficient, that such notice complied with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, and that the parties have proceeded in good faith. Accordingly, it is

**ORDERED**:

1.      The Debtors' Motions are GRANTED to the extent set forth herein below.

2.      All objections to the Debtors' Motions raised on the record at the Hearing that were not consensually resolved at the Hearing are hereby OVERRULED.  The Big Rock Motion is DENIED as moot based on the revisions to the Original Bidding Procedures incorporated in this Order at the request of Big Rock, without prejudice to the right of Big Rock to file an objection as set forth in paragraph 12 of this Order.

3.      The Debtors shall, within two (2) Business Days (as that term is defined in Section 30 of the A+ Revised Letter of Intent) following the date of entry of this Order, mail a copy of this Order, by United States first class mail, to (i) all parties and creditors on the Court's mailing matrices for these cases (including all parties listed on the Local Rule 1007-2 Parties in Interest List for these cases), (ii) all parties which, to the knowledge of the Debtors, have, or have asserted, liens on the Assets, (iii) all parties on the Bidder List, and (iv) all Contract Parties, and the Debtors shall thereafter file a certificate of service with the Court.  The Court approves the form and manner of such notice as being adequate and sufficient notice of the Bid Procedures

(as defined below), the proposed sale of the Assets (including the assumption and/or assignment of the Assumed Contracts, including the Resident Contracts), and the objection deadlines set forth herein, and finds that such notice complies with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

4.      As a result of Skyline's termination of the Skyline Letter of Intent, Skyline shall not be entitled to the Skyline Break-Up Fee.

5.      As provided in the December 2 Order, A+ is approved as the "stalking horse bidder". The A+ Break-Up Fee shall be due and payable to A+ as set forth in paragraph 17 of this Order. The binding provisions set forth in Section 29 of the A+ Revised Letter of Intent shall be binding upon the Debtors, WNT and A+.

6.      Within one (1) Business Day following the date of entry of this Order by the Court, A+ shall deliver a deposit in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "**Deposit**"), in immediately available funds, to the Debtors' bankruptcy counsel, Stichter, Riedel, Blain & Postler, P.A. ("**SRBP**"). The Deposit shall be deposited into a non-IOTA non-interest bearing trust account maintained by SRBP. The Deposit shall be non-refundable to A+ except as otherwise provided in Section 13 of the A+ Revised Letter of Intent and in the Definitive Purchase Agreement. The Deposit shall be applied to the cash consideration payable to the Debtors at the closing under the Definitive Purchase Agreement (the "**Closing**").

7.      As the stalking horse bidder, A+ shall promptly provide the Debtors with copies of all non-confidential third party reports received by A+ in connection with Due Diligence (as that term is defined in Section 13 of the A+ Revised Letter of Intent), and the Debtors shall

promptly upload those reports into their virtual data room and concurrently provide copies of those reports to the Examiner.

8.        By no later than December 20, 2016, after the Debtors' prior consultation with the Examiner regarding all aspects of drafting the Definitive Agreements, the Debtors, WNT and A+ shall have entered into the Definitive Purchase Agreement and the Current Operators and A+ and the New Operator(s) shall have entered into the OTAs.  The Definitive Purchase Agreement shall contain a list of the Assumed Contracts.  In all events, such Assumed Contracts shall include (i) all life-care contracts entered into pursuant to Chapter 651, Florida Statutes, and residency care contracts (including any authorized amendments thereto) between the Debtors and the current residents of the CCRC (as that term is defined in Section 2 of the A+ Revised Letter of Intent), and (ii) all contracts between WNT or the Current Operators and the current residents of the CCRC (collectively, the "**Resident Contracts**").  In addition, A+ shall agree to assume all of the Resident Obligations (as defined below).  Except with respect to the Resident Contracts and the Resident Obligations, A+ shall have the right under the Definitive Purchase Agreement (and any Qualified Bidder shall have the right under its Bidder's Agreement (as defined below) with the Debtors) until the earlier of Closing or three (3) Business Days following a determination of Cure Amounts (as defined in Exhibit A to this Order), in its sole and absolute discretion (including, without limitation, because a Cure Amount is determined to be greater than anticipated), to determine whether any unexpired lease or executory contract is to be an Assumed Contract, and assumption and assignment or rejection of such unexpired lease or executory contract shall be effective only upon the Closing, subject to the filing of a notice of closing and contract treatment, to be filed and served within three (3) Business Days after the Closing.  The A+ Revised Letter of Intent may be terminated by the Debtors or A+ in the event the Definitive

Agreements have not been executed by all of the parties on or before December 20, 2016.  In the event of any such termination, A+ shall not be entitled to payment of the A+ Break-Up Fee.

9.      The Debtors shall promptly file the executed Definitive Agreements with the Court and serve copies of the executed Definitive Agreements (including a clean Microsoft Word version of each document) to all parties on the Bidder List and/or their respective counsel, the Contract Parties, the Examiner, all appropriate state regulatory agencies, and all other parties listed in paragraph 11(c) below, and the Debtors shall thereafter file a certificate of service with the Court.

10.      A hearing (the "**Sale Hearing**") to consider approval of the Amended Sale Motion and the Definitive Agreements (including that they are the highest and best offer for the Assets) and to consider any timely filed objections thereto, and to consider approval of any higher and better offers for the Assets submitted in accordance with the Bid Procedures set forth in this Order, shall be held before the Honorable Michael G. Williamson at the United States Bankruptcy Court, Courtroom 8A, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602 **on January 11, 2017, at 10:30 a.m.**  The Sale Hearing may be adjourned and/or continued in open Court from time to time without further notice.

11.      The Court approves the following procedures (the "**Bid Procedures**") for the submission and consideration of any written competing bid ("**Bid**") by any competing bidder ("**Bidder**") for the Assets:

> (a)      Prior to the receipt by a prospective Bidder of any information from, and access to, the Debtors and WNT, each such Bidder will be required to execute a confidentiality and non-disclosure agreement in form and content acceptable to the Debtors (the "**NDA**"), to the extent not already executed.  Upon the execution of an NDA, each Bidder will be granted full and complete access to the Debtors' virtual data room.

(b)     At least five (5) Business Days prior to the Bid Deadline (as defined below), or such later date agreed to by the Debtors after prior consultation with the Examiner, a Bidder will be required to provide to the Debtors, WNT, the Examiner, counsel for the University Village Life Care Residents' Legal Protection Ad-Hoc Committee, and all appropriate state regulatory agencies relevant background and financial information (including, without limitation, such Bidder's latest available audited and unaudited financial statements) satisfactory to the Debtors, after prior consultation with the Examiner, demonstrating the Bidder's financial ability to close and to consummate an acquisition of the Assets, such as (i) evidence of the Bidder's ability to assume or satisfy the terms and obligations of the Bidder's Agreements and pay the purchase price provided for therein and to provide adequate assurance of future performance by such Bidder of the Resident Contracts, and/or (ii) an unconditional lending commitment from a recognized financial institution or cash sources in the amount of the cash consideration set forth in the Bid.  Nothing herein shall restrict the Examiner's powers and duties to request or subpoena documents from third parties or take depositions of third parties as set forth in the Examiner Order.  On or before December 16, 2016, A+ shall simultaneously submit the foregoing documents and information to the Debtors, WNT, the Examiner, and all appropriate state regulatory agencies.  A Bidder (including A+) that timely submits the foregoing documents and information and that the Debtors determine, in consultation with the Examiner, is financially able to consummate the purchase of the Assets shall be a "**Qualified Bidder**" and shall be entitled to then submit a Bid for the Assets as described in paragraph 11(d) below.

(c)     Any Qualified Bidder desiring to make a Bid for all or any of the Assets shall deliver the Bid, by electronic mail transmission, to counsel to the Debtors, Charles A. Postler, Esq. and Scott A. Stichter, Esq., Stichter, Riedel, Blain & Postler, P.A., 110 E. Madison Street, Suite 200, Tampa, Florida 33602 (cpostler@srbp.com and sstichter@srbp.com), and to the Examiner, Jeffrey W. Warren, 1801 N. Highland Avenue, Tampa, Florida 33602 (jwarren@bushross.com), **by no later than 5:00 p.m. (Eastern Standard Time) on January 6, 2017** (or such later time or date agreed to by the Debtors) (the "**Bid Deadline**").  Upon receipt of a Bid, counsel to the Debtors shall deliver each such Bid, by electronic mail transmission, to (i) the Office of the United States Trustee, Attn: Denise Barnett, Esq., Timberlake Annex, 501 East Polk Street, Suite 1200, Tampa, Florida 33602 (denise.barnett@usdoj.gov), (ii) counsel to WNT, Michael C. Markham, Esq., Johnson, Pope, Bokor, Ruppel & Burns, LLP, 403 E. Madison Street, Suite 400, Tampa, Florida 33602 (mikem@jpfirm.com), (iii) counsel to CPIF Lending, LLC, Mark A. Salzberg, Esq., Squire Patton Boggs (US) LLP, 2550 M Street, N.W., Washington DC 20037 (mark.salzberg@squirepb.com), (iv) counsel for the University Village Life Care Residents' Legal Protection Ad-Hoc Committee, David S. Jennis, Esq., 400 N. Ashley Drive, Suite 2450, Tampa, Florida 33602 (djennis@jennislaw.com), and (v) counsel to any Qualified Bidder who submits a Qualified Bid (as defined below).

(d)     In order to be a qualified bid (a "**Qualified Bid**"), a Bid submitted by a Qualified Bidder must include, or be in compliance with, the following (unless any such item is otherwise waived in writing by the Debtors after prior consultation with the Examiner):

i.     A copy of the initial written purchase offer in the form of (A) an asset purchase agreement, executed by such Qualified Bidder, in substantially the form of the Definitive Purchase Agreement, and (B) one or more operations transfer agreements, executed by such Qualified Bidder, in substantially the form of the OTAs (collectively, the "**Bidder's Agreements**"); provided, however, that any Bidder's Agreements that contain terms or language different from the Definitive Purchase Agreement or the OTAs must be black-lined to show any changes made by such Qualified Bidder to the form of the Definitive Purchase Agreement or the OTAs, as the case may be.   The Debtors may accept modifications to the Definitive Purchase Agreement as submitted by a Qualified Bidder who otherwise complies with the Bid Procedures if the Debtors determine, in the exercise of their business judgment and after prior consultation with the Examiner, that the proposed modifications result in a higher and better offer for the Assets or the proposed modifications are necessary due to the fact that the Qualified Bidder is not seeking to purchase substantially all of the Assets.

ii.    An initial Bid with a purchase price above the total purchase price offered by A+ in the Definitive Purchase Agreement (the "**A+ Purchase Price**") in an amount equal to or greater than the A+ Purchase Price, plus cash in the amount of the A+ Break-Up Fee, plus cash in the amount of Two Hundred Thousand and 00/100 Dollars ($200,000.00), for a total initial overbid of not less than Seven Hundred Thousand and 00/100 Dollars ($700,000.00) (the "**Initial Overbid Amount**"); provided, however, in the event that A+ does not submit a Qualified Bid, then such Initial Overbid Amount shall, prior to the commencement of the Auction, be reduced to not less than Two Hundred Thousand and 00/100 Dollars ($200,000.00).  The cash portion of the Qualified Bidder's purchase price shall be payable, in immediately available funds, at the Closing.

iii.   To the extent practicable, a statement that specifically sets forth the extent to which the Bid is higher and better than the offer set forth in the Definitive Agreements, including an allocation of the cash components of the Bid to (A) the Assets being purchased by the Qualified Bidder, (B) the claims against, and liabilities of, the Debtors and WNT, and (C) the MLR Shortfall Amount (as that term is defined in Section 8 of the A+ Revised Letter of Intent).

iv.    A designation of any executory contracts or unexpired non-residential real property leases such Qualified Bidder desires the Debtors to assume and/or assign to such Qualified Bidder under its Bidder's Agreement with the Debtors (the "**Designated Contracts**"), as well as a designation of any governmental approvals or consents required in connection therewith and, in the case of assumption and/or assignment, documents and information necessary to confirm adequate assurance of future performance by such Qualified Bidder pursuant to Section 365 of the Bankruptcy Code.  In the event that any of the Designated Contracts are not included in the list of Assumed Contracts set forth in the Definitive Purchase Agreement, such Qualified Bidder shall, within one (1) Business Day of the Bid Deadline, serve a copy of this Order and Exhibit A

attached hereto on any party to such additional Designated Contract(s) and thereafter file a certificate of service with the Court.  In all events, the Designated Contracts shall include the Resident Contracts and the Bid shall provide for the assumption by the Qualified Bidder of all of the Resident Obligations.

v.      The Bid shall not be contingent upon the receipt of financing or due diligence by the Qualified Bidder past the Bid Deadline.

vi.     The Bid shall provide that the Assets owned or held by the Debtors shall be sold on an "AS IS, WHERE IS" basis and the representations, warranties and covenants of the Debtors set forth in the Bidder's Agreement with the Debtors shall expire as of the closing of the sale transaction.

vii.    The Bid shall be valid and enforceable and binding on the Qualified Bidder through the closing date of its sale transaction.  The Bidder's Agreements shall be subject to acceptance by the Debtors, after prior consultation with the Examiner, and WNT (to the extent that WNT is a party to any Bidder's Agreements) solely by their execution thereof and necessary Court approval.

viii.   The Bid shall not contain any conditions precedent to such Qualified Bidder's obligation to purchase the Assets and assume and perform any liabilities to be assumed and to close the sale transaction, other than as may be included in the Definitive Agreements or as agreed by the Debtors after prior consultation with the Examiner.

ix.     A good faith deposit in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) (the "**Bid Deposit**") shall be delivered by the Qualified Bidder, by wire transfer of immediately available funds, to SRBP by no later than the Bid Deadline (or such later time or date agreed to by the Debtors after prior consultation with the Examiner).  The Bid Deposit shall be deposited into a non-IOTA non-interest bearing trust account maintained by SRBP and shall be held in escrow subject to the terms of this Order.  SRBP will provide wire transfer instructions upon any request received from a Qualified Bidder.  Such Bid Deposit will be non-refundable to the Qualified Bidder in the event such Qualified Bidder's Bid is approved by the Court at the Sale Hearing as the highest and best offer for the Assets and such Qualified Bidder fails to close on the purchase of the Assets for any reason (subject to any conditions to closing set forth in its Bidder's Agreements approved by the Court).  The Bid Deposit will be applied against the purchase price paid to the Debtors by the Qualified Bidder at the closing.  Within fifteen (15) days following the entry of the Sale Order (as defined below), SRBP will return the Bid Deposit of any Qualified Bidder (except the Backup Bidder) that is not selected as having the highest and best offer for the Assets at the Sale Hearing.  The Bid Deposit of the Backup Bidder shall be returned to the Backup Bidder as provided in paragraph 11(n) below.

x.      Full disclosure of each entity that will be participating in such Bid (including, but not limited to, disclosure of any "affiliate" or "insider" (as those

terms are defined in Sections 101(2) and 101(31), respectively, of the Bankruptcy Code) of the Debtors that may have an interest in any such entity or any other person with an interest in, control over, or relationship with the Qualified Bidder) in order to satisfy the requirements set forth in Sections 363(m), 363(n), 365(b), and 365(f)(2) of the Bankruptcy Code.  On or before the Bid Deadline, A+ shall simultaneously submit the foregoing disclosure to the Debtors and the Examiner.

            xi.      The Bid shall set forth (A) any applicable governmental, regulatory, or other approvals and any applicable consents that would be required to be obtained were the Qualified Bidder to be the Successful Bidder, (B) all actions taken or to be taken to obtain such approvals or consents, including, without limitation, the submission to the State of Florida Agency for Health Care Administration, the Florida Office of Insurance Regulation (the "FOIR"), and the Florida Department of Financial Services of information that would customarily be submitted in applications filed with those governmental agencies in order to obtain the necessary approvals to operate the CCRC (including, but not limited to, a certificate of authority from the FOIR), (C) any approvals or consents obtained, and (D) the Qualified Bidder's best estimates as to the likelihood and timing of any such approvals or consents.  On or before the Bid Deadline, A+ shall simultaneously submit the foregoing information to the Debtors and the Examiner.

            xii.     Notwithstanding anything to the contrary contained in this Order, any Bidder may submit a Bid to purchase only such Assets owned by or utilized by the Debtors and/or WNT as it deems necessary or appropriate, whether or not any specific Assets owned or utilized by the Debtors and/or WNT are proposed to be purchased by A+ pursuant to the Definitive Purchase Agreement.  There shall be no restrictions of any nature as to the number and type of Assets that a Bidder may seek to purchase.

            xiii.    Notwithstanding anything to the contrary contained in this Order, any Bidder may submit a Bid that does not provide for (A) the continuation of the CCRC (as that term is defined in Section 2 of the A+ Revised Letter of Intent), or (B) the acquisition of the ALF (as that term is defined in Section 2 of the A+ Revised Letter of Intent) and/or the SNF (as that term is defined in Section 2 of the A+ Revised Letter of Intent).

       (e)     An auction (the "**Auction**") to consider any competing Qualified Bids in respect of the Assets will be held at the United States Bankruptcy Court, Courtroom 8A, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602 **on January 11, 2017, at 10:30 a.m.** (or such later time or date agreed to by the Debtors, after prior consultation with the Examiner, or as may be scheduled by the Court).  By no later than 12:00 p.m. on Monday, January 9, 2017, the Debtors, after consultation with the Examiner, will advise each of the Qualified Bidders as to whether its Bid is a Qualified Bid and whether an Auction will be held as scheduled above.  All potential Qualified Bidders or their authorized representative(s) with full authority to participate in the Auction must be present in person at the Auction.

(f)      The Debtors will file a notice with the Court at least one (1) day prior to the date of the Auction indicating the number of Qualified Bids received and the names of the Qualified Bidders, and will serve such notice, by electronic mail transmission, on counsel to all Qualified Bidders.

(g)      At the Auction, bidding will begin at the purchase price stated in the highest and best Qualified Bid (the "**Initial Bid**") as selected by the Debtors in consultation with the Examiner prior to the commencement of the Auction.    All subsequent bids at the Auction above the Initial Bid (including any subsequent bid which may be made by A+) must be in incremental increases of at least Two Hundred Thousand and 00/100 Dollars ($200,000.00) (the "**Subsequent Overbid Amount**" and, together with the Initial Overbid Amount, the "**Overbid Amounts**").  For the avoidance of doubt, the A+ Break-Up Fee shall be credited to each bid of A+ made at the Auction.

(h)      Any Qualified Bidder (including A+) shall be entitled to submit further bids at the Auction.  Any successive bid submitted at the Auction shall be irrevocable through the Auction process unless and until it is declared to not be the highest and best bid.  The allocation of any higher and better increased bid amounts submitted at the Auction between the Assets of the Debtors and the Assets of WNT shall be resolved by the Debtors after prior consultation with the Examiner; provided, however, that the allocation of the total purchase price must be such that all claims of the Debtors are paid in full and the MLR Shortfall Amount is fully funded (in each such case as determined by the Debtors after prior consultation with the Examiner) before any of the increased bids submitted at the Auction can be allocated to the Assets of WNT.  At the Auction, the Debtors or the Examiner may request a Qualified Bidder to provide additional information demonstrating the Qualified Bidder's financial ability to close and to consummate an acquisition of the Assets.  The competitive bidding process among Qualified Bidders at the Auction shall continue according to the Bid Procedures until the Debtors determine, in the exercise of their business judgment and after consultation with the Examiner, that a Qualified Bidder has made the highest and best offer to purchase the Assets.

(i)      The Debtors, after prior consultation with the Examiner, may continue or adjourn the Auction from time to time with reasonable notice to the Qualified Bidders.

(j)      At the Sale Hearing, the Debtors will inform the Court of the results of the Auction and will recommend to the Court the offer that they consider to be the highest and best offer for the Assets, after taking into account all aspects of the Definitive Agreements, the Qualified Bids and the Bidder's Agreements (including, without limitation, the amount of the purchase price, the method and timing of the payment of the purchase price, any contractual adjustments to the purchase price, any liabilities of the Debtors to be assumed, the provision for adequate assurance of future performance of the Resident Contracts, any conditions to closing, the time for closing, and the representations, warranties, and covenants to be provided by the Debtors, prior to closing, and WNT).  The value of a Qualified Bid, for purposes of these proceedings, shall be determined by comparing, among other things, (i) the type, number and nature of any

changes in the Bidder's Agreements requested by each Qualified Bidder, (ii) the extent to which such modifications are likely to delay the closing of the sale to such Qualified Bidder, and the cost to the Debtors and their estates of such modifications or delay, (iii) the extent to which such Qualified Bid includes the purchase of all or less than all of the Assets, (iv) the type and amount of consideration to be received by the Debtors' estates, (v) the existence of any financing, due diligence or other contingencies, (vi) the amount of any cure payments, which, if paid, would reduce the proceeds available for distribution to creditors of the Debtors, (vii) the provision for adequate assurance of future performance of the Resident Contracts, (viii) the likelihood of the Qualified Bidder's ability to close the sale transaction, including the likelihood of receipt by such Qualified Bidder of the necessary state and federal regulatory approvals to operate the CCRC following the closing, and (ix) the net benefit to the Debtors' estates and their creditors, including the impact of the sale on the Residents (as defined below). All Qualified Bidders or their authorized representatives must be present at the Sale Hearing. At the Sale Hearing, the Examiner will provide an oral report as to the sale process and recommendations, including the cooperation and transparency of the participants. The Court will determine the highest and best offer for the Assets at the Sale Hearing. ANY SALE WILL BE SUBJECT TO APPROVAL OF THE COURT.

(k)    Prior to the Auction, the Debtors, in their reasonable discretion and after consultation with the Examiner, shall have the right to reject any and all Bids other than any Bid that is a Qualified Bid.

(l)    If any Bid does not conform to all of the requirements set forth above, such Bid will not be considered by the Court or be admissible at the Sale Hearing, unless otherwise agreed by the Debtors, after prior consultation with the Examiner, or otherwise ordered by the Court.

(m)    The Qualified Bidder whose Qualified Bid is selected by the Court at the Sale Hearing as the highest and best offer for the Assets shall be deemed the "**Successful Bidder**".

(n)    The Court shall register the second highest Qualified Bid and Qualified Bidder (the "**Backup Bidder**"), whose Bidder's Agreements shall be a binding contract with the Debtors and WNT, respectively, and who shall close, without the necessity of further Court order, in the event the Successful Bidder fails to consummate the acquisition of the Assets in accordance with its Bidder's Agreements and the order granting the Amended Sale Motion (the "**Sale Order**"). Any closing with the Backup Bidder shall occur within ten (10) days of written notification to the Backup Bidder that the Successful Bidder failed to close (subject to a reasonable extension necessary to obtain any required state regulatory approvals to operate the CCRC). The Bid Deposit of the Backup Bidder shall be retained by SRBP until the closing of the sale with the Successful Bidder, and shall be returned to the Backup Bidder within two (2) Business Days following such closing. In the event the Successful Bidder fails to close on the sale transaction in accordance with its Bidder's Agreements (or the Definitive Agreements in the event that A+ is the Successful Bidder), the Debtors shall keep the Bid Deposit of such Successful Bidder (or the Deposit in the case of A+) and the Debtors or their estates

reserve the right to pursue all available remedies, whether legal or equitable, available to the Debtors against such party. In the event the Successful Bidder fails to close on the sale transaction in accordance with its Bidder's Agreements (or the Definitive Agreements in the event that A+ is the Successful Bidder), and the Backup Bidder thereafter fails to close on the sale transaction in accordance with its Bidder's Agreements (or the Definitive Agreements in the event that A+ is the Backup Bidder), the Debtors shall keep the Bid Deposit of such Backup Bidder (or the Deposit in the case of A+) and the Debtors or their estates reserve the right to pursue all available remedies, whether legal or equitable, available to the Debtors against such party.

(o)     At the Sale Hearing, the Debtors will request that the Court make certain findings regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder and the Backup Bidder were selected in accordance with the Bid Procedures, (ii) the Auction was fair in substance and procedure, (iii) the bids of the Successful Bidder and the Backup Bidder were Qualified Bids as defined in this Order, and (iv) consummation of the sale contemplated by the bid of the Successful Bidder will provide the highest and best value for the Assets and is in the best interests of the Debtors, their estates, and their creditors. At the Sale Hearing, the Debtors will also request that the Court find that each of the Successful Bidder and the Backup Bidder is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code such that the reversal or modification on appeal of the sale of the Assets to the Successful Bidder or the Backup Bidder shall not affect the validity of the sale to the Successful Bidder or the Backup Bidder, whether or not the Successful Bidder or the Backup Bidder knew of the pendency of the appeal.

(p)     After the Sale Hearing, the Debtors shall submit to the Court a proposed Sale Order authorizing and approving the Bidder's Agreements executed by the Successful Bidder or the Backup Bidder, as applicable (or the Definitive Agreements if such party is A+), and authorizing the Debtors' execution of, entry into, and consummation of the Successful Bidder's or the Backup Bidder's, as applicable, Bidder's Agreements (or the Definitive Agreements if such party is A+).

(q)     At the Sale Hearing, the Debtors will also request that the Court enter an order confirming the Amended Plan (the "**Confirmation Order**"), which Confirmation Order shall provide, among other things, that (i) the implementation of the sale of the Assets is a sale under a plan confirmed under Section 1129 of the Bankruptcy Code, as provided in Section 1146(a) of the Bankruptcy Code, (ii) the Successful Bidder and the Backup Bidder shall receive the benefit of any releases or injunctions provided under the Amended Plan, and (iii) the Court shall retain continuing jurisdiction over any sale of the Assets.

(r)     All Qualified Bidders, the Successful Bidder, the Backup Bidder, WNT, and the Examiner shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Bid Procedures, the Auction or the sale of the Assets. All purchase and other definitive agreements and closing documents shall be governed by and construed in accordance with the laws of the State of Florida.

(s)    Except for A+, no Bidder submitting any Bid shall be entitled to any expense reimbursement or any break-up, termination or similar fee or payment.

(t)    There shall be no closing between the Successful Bidder (or the Backup Bidder) and the Debtors and WNT unless and until all required certificates of authority, licenses, or other state regulatory approvals are obtained by the Successful Bidder (or the Backup Bidder).

12.    Any creditor or other party in interest objecting to the Amended Sale Motion or the sale of the Assets to A+ or the Definitive Agreements must file written objections with the Court and serve same upon counsel to the Debtors and the Examiner **by no later than 5:00 p.m. (Eastern Standard Time) on January 6, 2017**, without prejudice to the Debtors conducting the Auction as described above.  Any such objection shall set forth with specificity the grounds for such objection.  Any creditor or other party in interest not timely filing such written objection shall be conclusively deemed to have waived any objection it may have to (i) the sale of the Assets to A+, (ii) the Definitive Agreements or (iii) the selection of A+'s offer as the highest and best offer for the Assets.  Any timely filed objections to the Amended Sale Motion or the sale of the Assets will be heard at the Sale Hearing, as well as any objection to the Bid of any other Qualified Bidder or the conduct of the Auction (which objections may be made at the Sale Hearing).

13.    On or prior to December 22, 2016, the Debtors shall file with the Court and serve on each counterparty to an Assumed Contract (excluding the Residents) that the Debtors may assume and/or assign to A+ (or another Qualified Bidder if A+ is not the Successful Bidder or the Backup Bidder), a notice of assumption and/or assignment as to the Assumed Contracts in substantially the form of the Contract Assumption Notice attached hereto as Exhibit A.

14.    Any lessor or other party (excluding the Residents) to any Assumed Contract to be assumed and/or assigned to A+ (or another Qualified Bidder if A+ is not the Successful

Bidder or the Backup Bidder) that objects to, and/or asserts any cure claims, defaults or any other claims against the Debtors in connection with, the proposed assumption and/or assignment of its Assumed Contract must file with the Court, **by no later than 5:00 p.m. (Eastern Standard Time) on January 6, 2017**, any objection to the assumption and/or assignment of its Assumed Contract and/or assertion of claim or default in connection with its Assumed Contract (a "**Contract Objection**"), which Contract Objection shall set forth:

        a.      the specific grounds for such Contract Objection;

        b.      any and all defaults of the Debtors (whether monetary or non-monetary) that it alleges are in existence under such Assumed Contract and, (i) if such alleged defaults are monetary, the nature of such monetary defaults (including the date and amount of any payment allegedly due under the Assumed Contract) and cure amounts, if any, due and owing by the Debtors pursuant to 11 U.S.C. §365(b) and, (ii) if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the amount of money or the type of action required to cure such non-monetary defaults, and in each such case applicable and appropriate documentation in support of such alleged defaults; and

        c.      any and all claims of any nature whatsoever against the Debtors.

15.     Any lessor or other party (excluding the Residents) to any Assumed Contract who fails to timely file a written Contract Objection to the proposed assumption and/or assignment of its Assumed Contract as set forth above shall be conclusively deemed to have waived, and shall be forever barred from asserting, any such Contract Objection and to have consented to the assumption and/or assignment of its Assumed Contract to the Successful Bidder or any Backup Bidder. Any lessor or other party (excluding the Residents) to an Assumed Contract not specifying any default or claim as required herein shall be deemed to have conclusively acknowledged that no default or claim exists under any such Assumed Contract. In the event that A+ is not the Successful Bidder or the Backup Bidder, any lessor or other party to any Assumed Contract may raise objections at the Sale Hearing to adequate assurance of future performance by the Successful Bidder or the Backup Bidder.

16.     Notwithstanding the provisions of paragraph 15 of this Order, the parties to the Resident Contracts (the "**Residents**") shall not be required to file a Contract Objection with the Court.  The procedure and deadlines for a Resident to file an objection with respect to amounts due to such Resident under a Resident Contract, including for entrance fee refund obligations and personal income protection obligations (each, a "**Resident Obligation**" and, collectively, the "**Resident Obligations**"), shall be established by separate order of the Court.

17.     The A+ Break-Up Fee shall only be due and payable to A+ in the event that (i) A+ (a) becomes a Qualified Bidder, (b) attends and participates in the Auction, (c) remains willing, and is able, to proceed with the transactions contemplated by, and is not in breach of any of its obligations under, the Definitive Agreements, and (d) is not the Successful Bidder at the Auction, and (ii) the Assets of the Debtors are actually sold to a party other than A+ (an "**Alternative Transaction**").  The A+ Break-Up Fee, if earned, shall be (a) allowed as an administrative expense claim pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code, and (b) payable to A+ only upon the closing of the Alternative Transaction.  The A+ Break-Up Fee shall be paid only out of the proceeds of the sale of the Assets.

18.     The Court finds that the Bid Procedures, including the Overbid Amounts, are reasonable under the circumstances and approves the Bid Procedures, including the Overbid Amounts, in connection with any Bids to purchase the Assets.

19.     The granting of the Debtors' Motion as set forth herein shall not constitute the approval of any sale of the Assets or any term or provision of the Definitive Agreements, except with regard to the A+ Break-Up Fee and the Overbid Amounts specifically approved herein and the other terms provided in this Order.  All parties reserve all rights and defenses with respect to the Amended Sale Motion and the Definitive Agreements.

21

20.     To the extent there is any inconsistency between the provisions of this Order and the terms of the Definitive Agreements, the provisions of this Order shall control.

21.     All documents required to be served by the Debtors pursuant to this Order shall also be served on the Examiner.

22.     This Court retain exclusive jurisdiction over any matter or dispute relating to the sale of the Assets, the Bid Procedures, the Auction, or any other matter or agreement (including any asset purchase agreement) that in any way relates to the foregoing.  Any party disputing the Bid Procedures or any other matter that in any way relates to the foregoing shall file an objection with the Court as soon as practicable to facilitate resolution of the objection.

23.     This Order amends and replaces the Original Bid Procedures Order in its entirety.


Attorney Charles A. Postler is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and to file a proof of service within three (3) days of entry of the Order.

# Exhibit A

## Contract Assumption Notice

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| **WESTPORT HOLDINGS TAMPA,** | Case No. 8:16-bk-08167-MGW |
| **LIMITED PARTNERSHIP,** | |
| **WESTPORT HOLDINGS TAMPA** | Case No. 8:16-bk-08168-MGW |
| **II, LIMITED PARTNERSHIP,** | |
| | *Jointly Administered under* |
| Debtors. | *Case No. 8:16-bk-08167-MGW* |
| _____/ | |

**NOTICE OF PROPOSED ASSUMPTION AND/OR ASSIGNMENT**
**OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

PLEASE TAKE NOTICE THAT the above-captioned debtors (the "**Debtors**") filed their Voluntary Petitions for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**") on September 22, 2016.

PLEASE TAKE FURTHER NOTICE THAT on October 31, 2016, in connection with the proposed sale (the "**Sale**") of substantially all of the assets of the Debtors and Westport Nursing Tampa, L.L.C. (collectively, the "**Assets**") at an auction for the Assets (the "**Auction**"), the Debtors filed with the Bankruptcy Court the Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Protection Fee; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (Doc. No. 118) (the "**Bid Procedures Motion**") seeking, among other things, the entry of an order by the Bankruptcy Court (a) approving bidding procedures in connection with the Sale of the Assets to the party submitting the highest and best offer for the Assets at the Auction, (b)

approving overbid amounts and a stalking horse protection fee in connection with such Sale, (c) approving the form and manner of notice of the Sale and the bidding procedures, (d) setting deadlines for objections to the Sale, and (e) establishing procedures for the assumption and/or assignment by the Debtors of certain executory contracts and unexpired leases to which either of the Debtors is a party (the "**Contracts**").

**PLEASE TAKE FURTHER NOTICE THAT** on November 23, 2016, the Debtors filed with the Bankruptcy Court the Debtors' Emergency Motion to Reconsider or, in the Alternative, Amend Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Protection Fee; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (Doc. No. 165) (the "**Motion to Amend**").

**PLEASE TAKE FURTHER NOTICE THAT** on December _____, 2016, the Bankruptcy Court entered its Amended Order Granting Debtors' Emergency Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Debtors' Assets; (II) Approving Overbid Amounts and Stalking Horse Protection Fee; (III) Approving Form and Manner of Notice of Bidding Procedures; and (IV) Setting Objection Deadlines (Doc. No. _____) (the " **Bid Procedures Order**")[2] granting the relief sought in the Bid Procedures Motion and the Motion to Amend, including, among other things, approving (a) bidding procedures for the Sale of the Assets to A+ Operating LLC ("**A+**") or such other bidder submitting the highest and best offer for the Assets and (b) procedures for the assumption and/or assignment by the Debtors of the Contracts (the "**Assumption and**

---

[2]     Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to such terms in the Bid Procedures Order.

**Assignment Procedures**"). A copy of the Bid Procedures Order (which incorporates the Assumption and Assignment Procedures) is enclosed herein.

**PLEASE TAKE FURTHER NOTICE THAT** on December 20, 2016, in connection with the Sale, the Debtors filed with the Bankruptcy Court the Debtors' Amended Motion for Entry of an Order Authorizing (I) the Sale of Debtors' Assets, Free and Clear of All Liens, Claims and Encumbrances, Subject to Higher and Better Offers, and (II) the Assumption and Assignment of Contracts (Doc. No. _____) (the "**Sale Motion**") seeking the entry of an order by the Bankruptcy Court authorizing (a) the sale of substantially all of the Debtors' Assets free and clear of all liens, claims, and encumbrances to A+, subject to higher and better offers, and (b) the assumption and/or assignment of the Contracts.

**PLEASE TAKE FURTHER NOTICE THAT** upon the closing of the Sale, in accordance with the terms of the Definitive Purchase Agreement, the Debtors may assume and/or assign to A+ (or any other Successful Bidder or Backup Bidder) the Contracts set forth on Exhibit 1 attached hereto (collectively, the "**Assumed Contracts**").

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO AN ASSUMED CONTRACT.** Under the terms of the Definitive Purchase Agreement, A+ (or the Successful Bidder or the Backup Bidder) may remove a Contract from the list of Assumed Contracts until the earlier of the Closing or three (3) business days following entry of a final order of the Bankruptcy Court determining all Cure Amounts (as defined below) and adequate assurance (if any) required for future performance of such Contract.

**Obtaining Additional Information**

Copies of the Bid Procedures Order, the Definitive Agreements and any other related documents are available upon written request to Debtors' counsel, Charles A. Postler, Esq.,

Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602,

cpostler@srbp.com.

**Important Dates and Deadlines**

        (a)      The deadline to submit a Qualified Bid is **by no later than 5:00 p.m. (Eastern Standard Time) on January 6, 2017**.

        (b)      The deadline to file an objection with the Bankruptcy Court to the entry of an order granting the Sale Motion is **by no later than 5:00 p.m. (Eastern Standard Time) on January 6, 2017**.

        (c)      The deadline for all counterparties to Assumed Contracts (excluding the Residents) to file an objection to the proposed assumption and/or assignment of their Assumed Contracts is **by no later than 5:00 p.m. (Eastern Standard Time) on January 6, 2017**. The procedures and deadlines for a Resident to file an objection with respect to amounts due to such Resident under a Resident Contract, including for entrance fee refund obligations and personal income protection obligations, shall be established by separate order of the Court.

        (d)      The Auction shall be held at the United States Bankruptcy Court, Courtroom 8A, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602 **on January 11, 2017, at 10:30 a.m.** (or such later time or date agreed to by the Debtors, after prior consultation with the Examiner, or as may be scheduled by the Bankruptcy Court, if one or more Qualified Bids are received by the Bid Deadline).

        (e)      A hearing (the "**Sale Hearing**") to consider approval of the proposed Sale will be held **on January 11, 2017, at 10:30 a.m.**, before the Honorable

Michael G. Williamson at the United States Bankruptcy Court, Courtroom 8A, Sam M.

Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602.

**Filing Assumption and Assignment Objections**

Any lessor or other party (excluding the Residents whose procedures and deadlines will be fixed by separate order) to any Assumed Contract to be assumed and/or assigned to A+ (or another Qualified Bidder if A+ is not the Successful Bidder or the Backup Bidder) that objects to, and/or asserts any cure claims, defaults or any other claims against the Debtors in connection with, the proposed assumption and/or assignment of its Assumed Contract must file with the Bankruptcy Court, **<u>by no later than 5:00 p.m. (Eastern Standard Time) on January 6, 2017</u>**, any objection to the assumption and/or assignment of its Assumed Contract and/or assertion of claim or default in connection with its Assumed Contract (a "**Contract Objection"**), which Contract Objection shall set forth:

a.      the specific grounds for such Contract Objection;

b.      any and all defaults of the Debtors (whether monetary or non-monetary) that it alleges are in existence under such Assumed Contract and, (i) if such alleged defaults are monetary, the nature of such monetary defaults (including the date and amount of any payment allegedly due under the Assumed Contract) and cure amounts, if any, due and owing by the Debtors pursuant to 11 U.S.C. §365(b) (the "**Cure Amounts**") and, (ii) if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the amount of money or the type of action required to cure such non-monetary defaults, and in each such case applicable and appropriate documentation in support of such alleged Cure Amount; and

c.      any and all claims of any nature whatsoever against the Debtors.

Any lessor or other party (excluding the Residents) to any Assumed Contract who fails to timely file a written Contract Objection to the proposed assumption and/or assignment of its

Assumed Contract as set forth above shall be conclusively deemed to have waived, and shall be forever bound from asserting, any such Contract Objection and to have consented to the assumption and/or assignment of its Assumed Contract to the Successful Bidder or any Backup Bidder.  Any lessor or other party (excluding the Residents) to an Assumed Contract not specifying any default or claim as required herein shall be deemed to have conclusively acknowledged that no default or claim exists under any such Assumed Contract.  In the event that A+ is not the Successful Bidder or the Backup Bidder, any lessor or other party to any Assumed Contract may raise objections at the Sale Hearing to adequate assurance of future performance by the Successful Bidder or the Backup Bidder.

Any Contract Objections will be considered at the Sale Hearing, or as soon thereafter as counsel may be heard, and must be served on the following parties:

> Charles A. Postler, Esq.
> Scott A. Stichter, Esq.
> Stichter, Riedel, Blain & Postler, P.A.
> 110 E. Madison Street, Suite 200
> Tampa, Florida 33602
>
> Scott M. Grossman, Esq.
> Greenberg Traurig, P.A.
> 401 East Las Olas Blvd., Suite 2000
> Fort Lauderdale, Florida 33131
>
> Jeffrey W. Warren, Examiner
> 1801 N. Highland Avenue
> Tampa, Florida 33602

**<u>EXHIBIT 1</u>**

**[To be added]**