ORDERED.

Dated:  December 18, 2018

_____
Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 8:16-bk-08167-MGW |
| | Chapter 11 |
| Westport Holdings Tampa, Limited Partnership, | |
| | Jointly Administered |
| Westport Holdings Tampa II, Limited Partnership, | |
| Debtors. | |
| _____/ | |

**MEMORANDUM OPINION AND ORDER
ON CPIF LENDING, LLC'S MOTION FOR ORDER
DETERMINING AMOUNT OF DIMINUTION-IN-VALUE LIENS**

At the beginning of this case, CPIF Lending consented to the Debtors' use of cash collateral (rent and other income generated from an independent living facility) so long as it received adequate protection under Bankruptcy Code §§ 361 and 363. While there's been no allegation that the value of CPIF Lending's cash collateral decreased during the case, its *non-cash* collateral (real property owned by the Debtors) did decrease by $4 million.

Relying on broad language in the Court's earlier cash collateral orders, CPIF Lending now asks the Court to impose a $4 million diminution-in-value lien against the Debtors' real property. Because §§ 361 and 363 only authorized the Court to protect CPIF Lending's interest in cash collateral, the Court's cash collateral orders do not provide for—nor is CPIF Lending entitled to—a diminution-in-value lien against the Debtors' real property.

## Background

The Debtors operate a continuing care retirement community known as University Village, which consists of an independent living facility and a health center. Four years ago, CPIF Lending loaned the Debtors $9.5 million. CPIF Lending's loan was secured by a first-priority lien on substantially all the Debtors' assets, including the independent living facility and the real property where the independent living facility operates, as well as rent, cash, deposit accounts, and other cash collateral generated by the independent living facility.

*The Debtors seek permission to use CPIF Lending's cash collateral*

When the Debtors filed this chapter 11 case, they immediately sought permission to use cash collateral.[1] To the extent a creditor claimed a lien on cash collateral, the Debtors proposed a replacement lien as adequate protection. CPIF Lending, which claimed a lien on cash collateral, had no objection to the Debtors' use of cash collateral so long as the Debtors provided

---

[1] Doc. No. 9.

CPIF Lending adequate protection for its interest in the cash collateral under Bankruptcy Code §§ 361 and 363.[2]

*The parties prepare a cash collateral order*
*containing broad adequate protection language*

After the Court granted use of cash collateral at a hearing, the Debtors and CPIF Lending negotiated the terms of an interim cash collateral order, which this Court entered.[3] The interim cash collateral order granted CPIF Lending a replacement lien to protect against any postpetition diminution-in-value of its collateral:

> As interim adequate protection for the Lender for any postpetition diminution-in-value ("Diminution-in-value") of the Lender's collateral . . . including, but not limited to the Cash Collateral, the Lender is hereby granted, to the extent of any Diminution of Value, additional and replacement valid, binding, enforceable, and automatically perfected postpetition security interests in and liens on . . . all property whether now owned or hereafter acquired or existing and wherever located, of each Debtor and each Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind of or nature whatsoever, real or personal . . . (collectively, the "Collateral").[4]

---

[2] Doc. No. 48.

[3] Doc. No. 82.

[4] *Id.* at ¶ 5.

Leading up to confirmation, the Court entered another nineteen interim cash collateral orders, each of which contained the same adequate protection language.[5]

*CPIF Lending relies on the broad cash collateral language
to argue for a diminution-in-value lien on non-cash collateral*

At confirmation, CPIF's expert, Ed Smith, testified that the Debtors' independent living facility was worth $12.9 million as of confirmation—$4 million less than what it was worth as of the petition date ($16.9 million). So, after confirmation, CPIF Lending requested that the Court grant it a $4 million diminution-in-value lien against the independent living facility,[6] which is supposed to be sold (along with the health center) under the confirmed plan in this case.

Rather than seeking immediate payment of the claimed $4 million diminution-in-value lien, CPIF Lending is content to be paid from the proceeds from the sale of University Village.[7] To the extent the $4 million diminution-in-value lien (coupled with payment of the $12.9 million) is insufficient to make

---

[5] Doc. Nos. 82, 99, 116, 160, 210, 230, 276, 477, 542, 570, 669, 697, 721, 787, 808, 914, 930, 947, 971 & 1000. In all, the Court entered twenty interim cash collateral orders and a final cash collateral order.

[6] Doc. No. 1004.

[7] *Id.* at ¶ 12.

CPIF Lending whole, then CPIF Lending requests a superpriority administrative claim under § 507(b).[8]

CPIF Lending's request for a $4 million diminution-in-value lien has significant ramifications. Under the confirmation order, CPIF Lending is only entitled to $12.9 million from the sale of University Village.[9] Although CPIF Lending's proof of claim is for less than $9.8 million, it is seeking millions more in postpetition attorney's fees and costs as an oversecured creditor. From CPIF's perspective, $12.9 million will not be enough to pay its secured claim (including postpetition fees and interest) in full.

*Granting CPIF Lending a diminution-in-value lien could jeopardize a successful reorganization*

The problem is that in order to confirm their plan, the Debtors were required to pay their attorneys and other professionals in full by the effective date of confirmation, unless the Debtors' attorneys and other professionals agreed otherwise.[10] Because there was not enough money to pay the Debtors' attorneys and professionals by the effective date of confirmation, the attorneys and other professionals deferred their fees (which total in the millions) and agreed to be paid out of any sale of University Village.

---

[8] *Id.* at ¶ 19.

[9] Technically, CPIF Lending will only receive around $12.1 million. Although $12.9 million is required to be reserved under the confirmation order, roughly $800,000 is earmarked to pay property taxes.

[10] 11 U.S.C. § 1129(a)(9).

If the Court were to grant CPIF Lending a $4 million diminution-in-value lien, then CPIF Lending would be entitled to the first $16.9 million—rather than $12.9 million—in proceeds from the sale of the independent living facility. As a practical matter, that means there likely will not be enough sales proceeds to pay the Debtors' attorneys and other professionals. Naturally, the Debtors, their professionals, and others oppose the relief CPIF Lending requests.

This Court must now decide whether CPIF Lending is entitled to a $4 million diminution-in-value lien. CPIF Lending contends that the broad language in the cash collateral orders grants CPIF Lending a replacement lien to protect against the postpetition diminution in the value of *any* of its collateral—not just its *cash* collateral. According to CPIF Lending, the parties negotiated that broad language twenty-one separate times. And in CPIF Lending's view, if the Court declines to enforce the agreement the way CPIF Lending says the parties intended, then it will be contravening public policy encouraging parties to settle disputes.[11]

---

[11] Doc. No. 1088 at 10 (citing *In re Weaver v. Aquila Energy Mktg. Corp.*, 196 B.R. 945, 956 (S.D. Tex. 1996) (overruling bankruptcy court because its "finding goes against the policy of law that encourages compromise between a trustee and creditors"); *In re Excelsior Henderson Motorcycle Mfg. Co.*, 273 B.R. 920, 924 (Bankr. S.D. Fla. 2002) (enforcing waiver of stay protection because of public policy encouraging bankruptcy settlements)).

## Conclusions of Law

While this Court does encourage parties to settle disputes, it is this Court—not the parties—that has the final say over the meaning of its orders.[12] That's because this Court is in the best position to interpret its own orders.[13] Having reviewed the cash collateral orders, this Court does not interpret them as granting a diminution-in-value lien to protect against a decline in the independent living facility's value.

*The Court did not intend to grant
CPIF Lending relief it never requested*

To be sure, the language in the cash collateral orders is broad. CPIF Lending relies on language that says CPIF Lending is entitled to a replacement lien on *all* the Debtors' property to protect against a decrease in the value of *any* of CPIF Lending's collateral. Taken out of context, that language would support CPIF Lending's argument for a diminution-in-value lien against the independent living facility.

But the Court must read its orders in context. Here, the context was the Debtors' use of CPIF Lending's cash collateral. "Cash collateral" is defined under the Bankruptcy Code to include cash, rent, deposit accounts, and other

---

[12] *In re Fontainebleau Las Vegas Holdings, LLC*, 2009 WL 519775, at *4 (Bankr. S.D. Fla. 2009) (explaining that the "Court has inherent authority to interpret the meaning of terms in the Court's own Orders") (quoting *In re Greater Neighborhoods, Inc.*, 2008 WL 4397425, at *1 (Bankr. S.D. Fla. 2008)).

[13] *In re Optical Techs., Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005).

cash equivalents.[14] In their cash collateral motion, the Debtors proposed that to the extent CPIF Lending claimed a lien on cash collateral, the Debtors would grant CPIF Lending a replacement lien in the cash collateral (i.e., cash, rents, deposit accounts, and other cash equivalents) to the same extent, validity, and priority as its original lien.[15]

In its written response to the Debtors' motion, CPIF Lending indicated it did not object to the Debtors' use of cash collateral so long as it received "adequate protection in accordance with sections 361 and 363 of the Bankruptcy Code."[16] Those two sections, read together, provide that when adequate protection is required under § 363 to protect an interest in cash collateral, the adequate protection may include a replacement lien in the cash collateral—the very adequate protection the Debtors were offering.

At the hearing on the Debtors' cash collateral motion, the Court granted the Debtors' motion and, as is customary, asked Debtors' counsel (as counsel for the prevailing party) to prepare the order granting the cash collateral motion. After the hearing, Debtors' counsel submitted the first of twenty interim cash collateral orders. That order, which was negotiated with or approved by CPIF Lending's counsel, contains the broad language CPIF

---

[14] 11 U.S.C. § 363(a).

[15] Doc. No. 9 at ¶ 12.

[16] *Id.*

Lending relies on. Although the Court carefully reviews orders submitted by counsel, the Court did not understand the orders to be granting a replacement lien on the Debtors' non-cash collateral.

For one thing, the Court was only concerned about and focused on *cash* collateral—not *non-cash* collateral. For another, neither party proposed or requested a replacement lien in non-cash collateral in their filings. Nor did either party raise such relief at the cash collateral hearings. The Court had no intention of granting relief that neither party requested, particularly extraordinary relief like a lien against *non-cash* collateral to protect CPIF Lending's interest in *cash* collateral.

Had CPIF Lending made such an extraordinary request, the Court would not have granted it. Under § 363, adequate protection is ordinarily limited to protecting the secured creditor's interest *in the cash collateral*:

> [A]t any time, on request of an entity that has *an interest in property . . . proposed to be used*, sold, or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of *such interest*.[17]

CPIF Lending has not demonstrated that a replacement lien on *non-cash* collateral—i.e., the Debtors' independent living facility—was necessary to protect its interest in *cash* collateral. Nor has CPIF Lending contended that the

---

[17] *Id.* (emphasis added).

decrease in the independent living facility's value was caused by the Debtors' use of cash collateral. On the record in this case, CPIF Lending would not have been—nor is it now—entitled to a diminution-in-value lien to protect its interest in non-cash collateral.

*CPIF Lending is not entitled to a
superpriority administrative expense*

A superpriority administrative expense claim under § 507(b) only arises when adequate protection under §§ 362, 363, or 364 turns out to be insufficient. And even then, the § 507(b) claim, when predicated on insufficient adequate protection of cash collateral, is limited to the diminution in the value of the cash collateral. Here, CPIF Lending's § 507(b) claim fails for the same reason its diminution-in-value lien claim fails.

CPIF Lending isn't seeking a § 507(b) claim because the adequate protection for its *cash* collateral (the replacement lien) was insufficient—the predicate for a § 507(b) claim. It's seeking a § 507(b) claim for a diminution-in-value of *non-cash* collateral: the independent living facility. Because CPIF Lending is seeking relief beyond that authorized under § 507(b), the Court cannot award CPIF Lending a superpriority administrative claim for a diminution in the value of the independent living facility.

## Conclusion

Had CPIF Lending wanted adequate protection of its interest in the independent living facility, it could have sought it one of two ways: It could

have moved for stay relief to foreclose its interest in the independent living facility, and if the Court denied that motion (which it almost certainly would have done), then CPIF Lending could have asked for a diminution-in-value lien as adequate protection. Or CPIF Lending could have moved for a diminution-in-value lien under § 363(e) as adequate protection for the Debtors' use of the independent living facility. But CPIF Lending chose not to pursue either option.

Having chosen not to pursue either option, CPIF Lending could not have included in the Court's cash collateral orders relief it did not request, nor can it now rely on broad language in the cash collateral orders to claim relief it didn't seek. In short, CPIF Lending did not seek—and the Court's cash collateral orders do not grant CPIF Lending—a diminution-in-value lien to protect against the decrease in value of non-cash collateral.

Accordingly, it is

**ORDERED**:

1. CPIF Lending's motion seeking a determination that it is entitled to a $4 million diminution-in-value lien to be paid out of the sale of University Village (or, in the alternative, to a superpriority administrative expense claim under § 507(b)) is DENIED.

2. CPIF Lending is not entitled to a diminution-in-value lien or a superpriority administrative expense claim under § 507(b).

Attorney Jeffrey Warren is directed to serve a copy of this Memorandum Opinion and Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of this Memorandum Opinion and Order.

**Jeffrey W. Warren, Esq.**
**Adam Lawton Alpert, Esq.**
  Bush Ross, P.A.
*Counsel for Jeffrey W. Warren, as Liquidating Trustee for Westport Holdings Tampa, Limited Partnership and Westport Holdings Tampa II, Limited Partnership*

**Traci H. Rollins, Esq.**
**Mark A. Salzberg, Esq.**
**Elliot M. Smith**
  Squire Patton Boggs (US) LLP
*Counsel for CPIF Lending, LLC*